## THE STATE v. GILMORE, *Appellant.*

1. **Criminal Law**: GAMBLING DEVICE : REVISED STATUTES, SEC. 1547. Ordinary playing cards, when used for playing any game for money or property, are not a gambling device within the meaning of Revised Statutes of 1879, section 1547, as amended by the act of March 9, 1881, (Acts, 1881, p. 112,) prohibiting the setting up or keeping of any "table or gambling device commonly called A. B. C., faro bank, E. O., roulette, equality, keno, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property."

2. ——— : ——— : REVISED STATUTES 1879, SECS. 1548, 1549. Playing cards are a gambling device within the meaning of Revised Statutes, 1879, sections 1548, 1549.

3. ——— : ——— : CARDS. The proprietor of a saloon who gives out cards and sells chips or checks to persons frequenting his dram shop who call for the same for the purpose of playing seven-up, euchre, etc., with each other, on the tables in the bar-room ; and who takes no part in the games so played by his customers, is guilty of the offense prohibited by Revised Statutes of 1879, section 1549, and should be indicted and tried under that section.

*Appeal from Jackson Criminal Court.*—Hon. Henry P. White, Judge.

Reversed.

*J. S. Brooks, O. T. Knox* and *Traber & Gibson* for appellant.

(1) The table and gambling devices, to-wit: "Chips or checks, commonly called poker chips, and cards, commonly called playing cards," mentioned in the indictment, do not fall within the act under which appellant was indicted, for the reason that they are not named in the act, and they cannot be brought within the meaning of the act, under the general words "or any kind of gambling table or gambling device,"

because where a statute enumerates particular classes of persons or things, followed by general words, the general words will be limited in their meaning and restricted in their operation to objects of like kind with those specified. *Nuckalls v. Commonwealth*, 32 Gratt. 884, 894 ; *State v. Bryant*, 90 Mo. 534 ; *City of St. Louis v. Laughlin*, 49 Mo. 559 ; *Knox City v. Thompson*, 19 Mo. App. 525 ; *St. Louis v. Herthel*, 14 Mo. App. 469 ; *Commonwealth v. Wyatt*, 6 Rand. ( Va.) 694, 702 ; *Ritte v. Commonwealth*, 18 B. Mon. 35, 39, 40 ; *People v. Reilly*, 15 N. W. Rep. 521 ; *Regina v. Whitnash*, 7 Barn. & Cres. 596 ; Sedg. Stat. & Const. Law, p. 423 ; Bishop Stat. Crimes ( 2 Ed.) secs. 245, 864, 866 ; Chitty on Contracts ( 10 Am. Ed.) t. p. 90 ; Broom's Leg. Max. ( 6 Am. Ed.) s. p. 625 ; *State v. Hawkins*, 15 Ark. 257 ; *Stith v. State*, 13 Ark. 680. (2) The words of the act, " or on the side, or against the keeper thereof," are intended to define the kind of gambling device and game of chance contemplated by the act, and must be construed in conjunction with the other clauses of the act, the rule of construction being, that all the words of a statute must be construed in such a way as to give them effect, if possible, and in connection with the words that accompany them. *State v. Hays*, 78 Mo. 60 ; *Latham v. Agnew*, 70 Mo. 48 ; *State v. Diveling*, 66 Mo. 375 ; *Neenan v. Smith*, 50 Mo 525 ; *St. Louis v. Herthel*, 14 Mo. App. 471 ; *Hicks v. Jamison*, 10 Mo. App. 35 ; *State v. Bogardus*, 4 Mo. App. 215 ; *Railroad v. Railroad*, 2 Mo. App. 69 ; Cooley's Const. Lim. ( 4 Ed.) p. 223 ; Bishop Stat. Crimes ( 2 Ed.) secs. 80–82. (3) This court will take judicial notice of the difference between cards commonly called playing cards and poker chips, and the devices mentioned by name in the act. But if not, then the burden of proof was on the state to show that the devices mentioned in the indictment were *ejusdem generis* with those mentioned in the act, for there is no presumption that they are of the same class.

No person is to be made subject to a penal statute by presumption or implication. *Nuckalls v. Commonwealth*, 32 Gratt. 884, 887 ; *State v. Bryant*, 90 Mo. 534 ; *State v. Russell*, 17 Mo. App. 16 ; *State v. Sellner*, 17 Mo. App. 39 ; *State v. Bruner*, 17 Mo. App. 274 ; *Commonwealth v. Emmons*, 98 Mass. 6 ; *People v. Millard*, 53 Mich. 63 ; Bishop Stat. Crimes, sec. 889 ; *State v. Hawkins*, 15 Ark. 259. (4) The statute being penal and criminal must be strictly construed in those parts which are against defendant, and liberally in those parts which are in his favor ; and when doubts arise, they must weigh only in favor of the accused. *State v. Bryant*, 90 Mo. 534 ; *Manz v. Railroad*, 87 Mo. 278 ; *Fusz v. Spaunhorst*, 67 Mo. 256 ; *Howell v. Stewart*, 54 Mo. 400 ; *United States v. Wiltberger*, 5 Wheat. 76 ; Bishop Stat. Crimes ( 2 Ed.) secs. 193, 194, 227. (5) The evidence did not show that defendant set up the device, but that others did it. So that if he committed any crime, it was that of permitting a gambling device to be set up on premises occupied by him. R. S. 1879, sec. 1549 ; *Commonwealth v. Burns*, 4 J. J. Marsh. 177.

*John M. Wood*, Attorney General, for the State.

(1) Cards have been repeatedly decided by this court to be gambling devices, and tables at which the same were played gambling tables when money or property is bet on the result of a game or when money or property is played for, and when so used constitute gambling devices. And though the principles of the game may be essentially different from those specially mentioned by the statute, if the devices when used in the manner above stated "are capable, when operated upon, to produce games of chance," they will be included within the general clause of the statute as being of a kindred nature and similar in kind to those mentioned. *State v. Ames*, 1 Mo. 524 ; *State v. Purdon*, 3 Mo. 114 ; *State v. Ellis*, 4 Mo. 474 ; *Schropshire*

*v. Glascock,* 4 Mo. 536 ; *State v. Eubanks,* 5 Mo. 450 ; *State v. Mitchell,* 6 Mo. 147; *State v. Bates,* 10 Mo. 109 ; *State v. O'Blenis,* 12 Mo. 311 ; *State v. Hereford,* 19 Mo. 377 ; *State v. Nelson,* 19 Mo. 393 ; *State v. Skaggs,* 33 Mo. 92 ; *McCoy v. Zane,* 65 Mo. 11. (2) It is not necessary, as insisted by appellant, that defendant should have participated in the game. If he sets up or keeps any table or gambling device, etc., * * * and either induces, entices or permits any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played, he is guilty under the statute. "To set up or keep or carry on * * * the gambling device * * * is an offense a great deal more injurious to the public morals than the act of betting upon the gambling devices so set up or conducted." *State v. O'Blennis,* 12 Mo. 311 ; *State v. Fulton,* 19 Mo. 680.

BRACE, J.—The charge in the indictment in this case is, that the defendant "did unlawfully and feloniously set up and keep a certain table and gambling device, to-wit : A certain table and chips or checks commonly called poker chips, and certain cards commonly called playing cards, all the same being gambling devices adapted, devised and designed for the purpose of playing a certain game of chance commonly called poker for money and property, and did then and there unlawfully and feloniously entice, induce and permit divers persons whose names are unknown to play at and upon said table and gambling device." On this indictment, he was tried, convicted and sentenced to imprisonment in the county jail for six months under the provisions of Revised Statutes, 1879, section 1547, as amended by the act approved March 9, 1881, (Acts, 1881, p. 112,) which reads as follows : "Every person who shall set up or keep any table or gambling device commonly called A. B. C., faro bank, E. O., roulette,

equality, keno, or any kind of gaming table, or gambling device, adapted, devised and designed for the purpose of playing any game of chance, for money or property, and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played, or by means of such table or gambling device, or on the side or against the keeper thereof, shall on conviction be adjudged guilty of a felony, and shall be punished by imprisonment in the penitentiary for a term not less than two nor more than five years, or by imprisonment in the county jail for a term not less than six nor more than twelve months.''

The evidence tended to show that appellant was the proprietor of a saloon in Kansas City; that he furnished to persons who came to his saloon cards and chips or checks; that persons played in his saloon with the cards and chips, upon tables, such games as seven-up, euchre and poker for drinks and money; that the tables used were the ordinary tables usually kept in saloons upon which to place lunches and wine and beer glasses filled with wine and beer to drink, by persons who desired to sit while drinking in appellant's saloon; that the games were played in the same room where his bar stood and not in another room; that appellant did not participate in such games nor play with nor bet against any of the players; that the players bet their money against each other and not on the side of or against appellant, who took no part in the games, either directly or indirectly; that the cards and chips used were handed out from behind the bar only to such persons as requested them; that after the cards and chips were thus given out, appellant had nothing whatever, to do with them till they were returned to him; that appellant did not have the care, use or management of the cards or chips, or of the games played, and had nothing to do with the cards or chips further than to

give them to such persons as called for them, after which such persons alone had the use, care and management thereof ; that he would sell the chips to the players at five cents each when they commenced the game, and when one or all quit he would redeem the chips which each one had at that rate ; that there was a "take off" in every game of so many chips for the highest or best hand ; as, for example, for "aces up" there was a "take off" of one chip ; for "threes" two chips, and so on ; for "fulls," "flushes," etc., so many chips were taken off. These take-off chips were returned to the bar without redemption.

It will not be necessary to notice the instructions in detail. The court in substance instructed the jury that an ordinary pack of playing cards and poker chips is a gambling device within the meaning of Revised Statutes, section 1547, *supra,* provided such cards and chips are used for the purpose of playing any game of chance for money or property. Whether this construction of the law is correct is the controlling question in the case. The qualification contained in the proviso cannot have the effect of bringing the cards and chips mentioned within the meaning of said section, for while the device therein prohibited must be adapted, devised and designed for playing a game of chance for money or property, the offense of him, who sets up or keeps the prohibited device of this section, is the same whether he permits others to bet money or property or simply to *play at* a game played by means of such device for amusement only. So the section reads and so it was held to mean in *State v. Fulton*, 19 Mo. 680. This section of the statute is levelled at certain gambling devices ; section 1549, at one who permits such devices, or any gambling device to be set up or used for the purpose of gambling on his premises, and section 1548, at any one who gambles at or by means of any gambling device.

The prohibitions of section 1547 do not apply to games but to devices, and is limited to devices, adapted,

devised and designed for the purpose of playing a game of chance. The chairs upon which the players sit, the ordinary table upon which they shuffle, deal and throw the cards and the chips, nickels, pennies or what not for which they play in an ordinary game of cards, are adjuncts, conveniences and incentives to a game of chance, but neither one of these, nor all combined, is a device for playing such game. The pack of cards is the device, adapted, devised and designed for playing the game of chance, the thing with which the game is played. It is the device that is prohibited, it matters not whether the game played is poker, euchre, whist, seven-up, or what the name of the game may be, or whether the stake played for is a dollar, a dime, a nickel or an ivory chip, representing the value of either, or no value. The question then resolves itself into this: Is an ordinary pack of playing cards a gambling device within the meaning of section 1547, *supra?*

In prosecutions under the sections of the statute in previous revisions corresponding with 1548 and 1549, it has been held in several cases, that playing cards are a gambling device within the meaning of such sections. *State v. Purdom*, 3 Mo. 115; *State v. Ellis*, 4 Mo. 474; *Eubanks v. State*, 5 Mo. 450; *State v. Bates*, 10 Mo. 166; *State v. Herryford*, 19 Mo. 377; *State v. Skaggs*, 33 Mo. 92. But we have failed to find a case prosecuted under the law contained in section 1547, which has been on the statute book in terms substantially the same as in the present revision, since 1825, in which it has been held that such cards were a gambling device within the meaning of that section, and it having never been so expressly ruled, we do not feel constrained, in this case, in which we are called upon to pass upon this question directly, to follow conclusions that might be drawn from *dicta* in some of those cases in which this section was only indirectly considered, unless an independent examination of the statute will warrant it.

The application of a few familiar principles of interpretation ought to determine the question. Certain gambling devices are specifically named in the section under consideration. Cards are not of the number. Following those specifically named are the general words " or any kind of gambling devices adapted," etc. Under the rule that where general words follow particular ones, they must be construed as applicable to things of the same general class; cards are not included in this general designation unless they are *ejusdem generis* with the devices specifically named in the section. That they are so, even when used with chips to play a game of poker, we are not advised by any evidence in the record, or by any knowledge derived from other sources. That they are not, seems to appear from the nature of the particular devices, so far as we have been able to learn it, from adjudicated cases, in courts of states the manners and social customs of whose people most nearly resemble our own. *Nuckalls v. Commonwealth*, 32 Gratt. 884; *Commonwealth v. Wyatt*, 6 Rand. 694; *Ritte v. Commonwealth*, 18 B. Mon. 35; *State v. Hawkins*, 15 Ark. 259; *Stith v. State*, 13 Ark. 680. The construction contended for is condemned by the rule of *ejusdem generis*.

Another rule of construction is " that every word and clause should, if possible, have assigned to it a meaning, leaving no useless words." The words " or on the side or against the keeper thereof " in this section are rendered useless when it is attempted to be applied to cards used in playing a game of poker, or any other ordinary game of cards. So if every kind of gambling device was intended to be included in the class of devices mentioned in this section, what is the necessity in section 1548, after providing a penalty for any one who shall bet upon any gambling table, bank or device prohibited by section 1547, of adding the words " or at or upon any other gambling device? " Evidently they were used

because, in the mind of the legislator, the general words in the preceding section, being limited to devices of the kind mentioned, it was necessary to use additional words to include devices not of the class mentioned, otherwise they are useless. When it is considered that section 1549 makes ample provision for the punishment of one who permits his premises to be used for the purpose of gambling by means of *any* device, and when looking further along in the statute, we consider the summary and stringent provisions made for the seizure and confiscation of the devices prohibited by the section under consideration, and their public destruction by fire, the conclusion that ordinary playing cards are not within the terms of this section, reached from a consideration of the phraseology of the section in connection with that of the one immediately following it, would seem to be required in order to render it harmonious with the general intent of the whole enactment, and thus another rule of interpretation leads to such a construction.

The gambling devices enumerated in this section are the same as those enumerated in the original act of 1825, except "keno" which was added to the list in 1865, and the keepers of them have always been made obnoxious to severe penalties. In the original act, they were liable to punishment not only by fine and imprisonment but by stripes and the pillory, and by the last amendment the offense is made a felony. The severity of the penalty, in itself, to some extent indicates the character of the devices aimed at, at least serves as a warning not to extend by construction the operation of the act beyond the requirements of its terms, while the serious consequences that might result from following the construction contended for by the state to its logical sequence add force to the warning. That ordinary playing cards were not within the meaning of the lawmaker in section 1547, as it appears in the original law

covering this subject (Revised Statutes, 1825, p. 309, sec. 87), and that they were within his meaning in the two following sections 1548 and 1549 (R. S. 1825, p. 310, secs. 88 and 89) is clearly apparent, and whatever obscurity may have been cast upon that meaning in subsequent revisions, a proper construction of these three sections, 1547, 1548 and 1549, as they appear in the present revision discloses the same legislative intent.

On the evidence in this case, the defendant should have been indicted and tried under section 1549, for an offense under which he could have been legally convicted and punished. His conviction, under section 1547, was not authorized by law, and for the errors which lead to it, the judgment is reversed and the defendant discharged. All concur, except SHERWOOD, J., absent.