## THE STATE OF MISSOURI, Respondent, v. THEODORE KOONSE, Appellant.

### Kansas City Court of Appeals, March 4, 1907.

1. **ASSAULT AND BATTERY: Appellate Practice: Evidence: Verdict.** Where a verdict in a case of assault and battery is supported by the evidence the appellate court will not disturb the judgment unless there is prejudicial error of law in the record.

2. ———: **Parent and Child: Adoption: Common Law: Statute.** Section 8557, Revised Statutes 1899, applies only to cases where the relations between the parties to the assault are not that of parent and child but of master and apprentice or some analogous relationship; and section 1850 applies to assault of a parent upon a child and where the child is such by deed of adoption said section applies as it would to a natural parent.

3. ———: ———: **Parent's Authority: Extent of Chastisement.** Courts do not constitute themselves arbiters of the household and so long as the parent in good faith thinks that what he does is for the benefit of the child he is within his prerogative and the law will not interfere; but the welfare of the child is the ground on which the parental right to chastisement is founded; and where the punishment is excessive and cruel showing beyond a reasonable doubt that the parent was not acting in good faith for the benefit of the child but to satisfy his own evil passions he is no longer to be considered a judge administering the law of the household, but a malefactor guilty of unlawful assault on the helpless person intrusted to his care and protection.

4. ———: ———: **Information: Intent.** An information alleging an "unlawful assault" by a parent upon a child is sufficient and it is not necessary to charge an intent.

State v. Koonse.

5. ———: ———: Instruction: Malice. An instruction directing a finding of guilty if the defendant "inflicted unreasonable, cruel and excessive punishment" without including the hypothesis of malice is not error.

6. ———: ———: ———: Corporal Chastisement. The use of the word punishment in an instruction without qualifying it with the adjective corporal is not subject to criticism.

7. ———: ———: Evidence: Res Gestae: Continuous Assault. The parent is charged in the information with an assault upon his child. Evidence showed that the defendant compelled the boy to walk barefooted before him for three or four miles over rough and rocky roads, striking him repeatedly with a buggy whip and inflicting severe punishment on him. *Held*, these facts combined to present a continuous assault and the occurrences and circumstances were of the *res gestae* and properly admitted.

Appeal from Cooper Circuit Court.—*Hon. William H. Martin*, Judge.

AFFIRMED.

*C. D. Corum* for appellant.

(1) The defendant had the legal care and control of the infant, William Brown. R. S. 1899, sec. 1857. This enactment repealed the common law on this subject and rendered it inoperative. It abrogated and annulled it. State v. Slaughter, 77 Mo. 487; State v. Boogher, 71 Mo. 632; Hughes' Criminal Law, sec. 4544; 26 Encyc. Law, p. 665. (2) Even if the provisions of the common law applicable to the defendant in the case at bar had been in force in this State, still under the evidence the information would have been insufficient. The fact that the defendant had adopted the child was sufficient to relieve the defendant from the provisions of the general rule. And that fact being shown, it obviously follows that an indictment which might be good in a conceivable case, is deficient in the case at bar. State v. Sears, 86 Mo. 170; State v. Williams, 66 Mo. App. 148. (3) Instruction numbered 3 on the second count of the information is a replication of instruction numbered 2,

supra. Both are erroneous. The charge against the defendant was assault and battery, but under these instructions, if one of the jury believed that the defendant compelled the prosecuting witness to go barefoot and that such an act was unreasonable, cruel and excessive punishment, then he was warranted in finding the defendant guilty. (4) Instructions numbered 2, 3, 4 and 5, are further erroneous in this: The assault must have been inflicted with criminal malice or there must have been some permanent personal injury. 1 Bishop's New Criminal Law sec. 882; State v. Jones, 95 N. C. 588, 59 Am. Rep. 282; State v. Alrod, 68 N. C. 322; State v. Pendergrass, 2 D. & B. 365, 31 Am. Dec. 416; Schouler, Dom. Relations (4 Ed.), sec. 244; 1 Blackstone's Commentaries, 556; 2 Greenleaf, sec. 97; Taennehoffer v. State, 69 Ind. 295; Commonwealth v. Randall, 4 Gray. 36; State v. Burton, 45 Wis. 150. (5) Under this instruction, if the jury believed from the evidence beyond reasonable doubt that the defendant chastised the prosecuting witness and in doing so used an improper instrument, then they must find him guilty. Certainly this is not the law, and that it is reversible error is held in Stanfield v. State, 43 Tex. 167. (6) The defendant was charged by information in two counts with having made two assaults on the prosecuting witness. He could be expected to be prepared to meet the charge of having made two assaults and two assaults only. But the court permitted the State to prove that the defendant whipped the prosecuting witness on six occasions. In other words, the theory of the State is that the defendant was guilty of six assaults. The admission of the testimony in reference to all of these alleged assaults was error. It confused and mystified the defendant in his defense and served to arouse the passions of the jury against him. Upon what theory could this testimony be admissible? These sepa-

rate assaults had no tendency to prove the charge laid in the information. They threw no light upon them and had no logical connection therewith. State v. Spray, 174 Mo. 585; State v. Goetz, 34 Mo. 85; State v. Daubert, 42 Mo. 242; State v. Parker, 96 Mo. 389; State v. Jackson, 95 Mo. 649; 1 Bishop's New Crim. Procedure secs. 1120, 1124; Hughes' Criminal Law and Procedure, sec. 3139.

*Charles W. Journey* for respondent.

(1) The information in this case is in the usual form and was drawn in conformity with approved precedents. State v. Boyer, 70 Mo. App. 156; Kelley's Crim. Law and Prac., sec. 377. (2) It was unnecessary to charge that the assault was made willfully, maliciously or intentionally. State v. Boyer, 70 Mo. App. 156; State v. Cox, 43 Mo. App. 328; 2 Bishop on Criminal Procedure, sec. 58. (3) The information was properly verified. R. S. 1899, sec. 2447; State v. Jacobs, 100 Mo. App. 52; State v. Hicks, 178 Mo. 433; State v. Hunt, 106 Mo. App. 326. (4) It is not error for the trial court to permit witnesses to testify to other assaults than the ones charged in the information. In fact it is the practice in this State to permit such testimony, especially in misdemeanors. State v. Heinze, 45 Mo. App. 403; State v. Pigg, 85 Mo. App. 399; State v. Hopper, 21 Mo. App. 510; State v. Hughes, 82 Mo. 86; State v. Boyer, 80 Mo. App. 156. Where the specific intent present in making an assault is in question, as in this case, as to whether the defendant acted honestly in correcting the child, or, whether or not, under the pretext of duty, he was gratifying his malice, evidence of other assaults are admissible. Underhill on Criminal Evidence, sec. 355; Elliott on Evidence, sec. 3105; State v. Patrick, 107 Mo. 147; Woodruf v. State, 101 N. W. 1117; Hughes' Crim. Law and Procedure, sec. 3138 and the many cases there cited. (5) No error was committed in permitting testimony

that defendant compelled Willie Brown to run ahead of him over rough and rocky roads, in his bare feet. This act upon the part of the defendant formed a part of the transaction—the assault. It was wrongful, physical violence, therefore assault. 1 Bishop on Criminal Law, sec. 548, 556; 2 Bishop on Criminal Law, sec. 28.

JOHNSON, J.—The prosecuting attorney of Cooper county filed an information against defendant before a justice of the peace, which in separate counts charged him with the offense of assault and battery inflicted on the person of Willie Brown. The assault alleged in the first count occurred on August 26, 1905, and that in the second on March 1st of the same year. The information is founded on section 1850, Revised Statutes 1899, which provides: "Any person who shall assault or beat or wound another, under such circumstances as not to constitute any other offense herein defined, shall, upon conviction, be punished by a fine not exceeding one hundred dollars, or imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment." The trial in the circuit court, where the cause was taken on appeal, resulted in the conviction of defendant and his punishment was fixed at the maximum penalty provided in the statute.

Willie Brown is an orphan, who was twelve years old at the time of the commission of the first offense charged. About two years before that event, defendant, a farmer living in Cooper county, procured the boy from a charitable institution in St. Louis under a deed of adoption and from that time stood in the relation of a parent to him. On August 25, 1905, the boy ran away from the home of defendant where he was domiciled and went to the home of another farmer named Martin. He was recaptured by defendant, but late in the evening ran away again and stopped at the same place, where he stayed during the night. Defendant immediately started in pursuit and during his quest called at the Martin

place that night and was told that the boy was not there. After further search he returned next day, August 26th, and found the boy. Defendant rode horseback and carried, so plaintiff and his witnesses say, an ordinary buggy whip. The boy mounted the horse behind defendant at the command of the latter and they started towards home which was about five miles distant. They had traveled but a short distance when defendant ordered his companion to alight. From thereon, the child was compelled to travel the remaining distance on foot ahead of the horse and was forced to run at the limit of his speed and endurance by occasional lashings from the whip. He was barefooted and part of the way lay on stony ground. When he reached home one of his feet was severely bruised and his back carried many marks and cuts produced by the lash. Photographs of his naked body taken several days after the injury disclosed the fact that the punishment was of the most severe nature. The wounds had not entirely disappeared at the time of the trial in the circuit court which occurred in the middle of the following October and were exhibited to the jury. Defendant's testimony tends to show that the conduct of the boy called for parental correction and that this punishment was not so severe as that depicted in the evidence adduced by the State. He admits he forced the boy to travel on foot ahead of the horse, but denied he goaded him forward. Admits whipping the child, but says he used a riding whip made from the small end of a cheap buggy whip and that the punishment, which he describes as moderate, was provoked by the stubborn refusal of the boy to answer some questions asked him.

Relative to the assault charged in the second count of the information, the evidence adduced by the State discloses that it consisted of a severe whipping administered by means of a heavy whip called a blacksnake. It is unnecessary to detail the facts of this chastisement pro and con. Suffice it to say; that the State produced

evidence, which, if believed, established the fact beyond a reasonable doubt that defendant on each occasion gave full rein to violent temper and instead of employing a reasonable method and degree of corporal punishment to be expected of a parent actuated by solicitude for the welfare of his child wreaked his fury on the person of this helpless boy in a manner shocking and repulsive to all sense of humanity and decency. On the other hand, the evidence of defendant is to the effect that in neither instance did he punish with a torturous instrument, nor with undue severity. The jury found against defendant on the issues of fact thus raised, and, as the evidence as a whole affords no justification for interfering with this finding, we will adopt as proven the facts on which it is based and will not disturb the judgment unless we find prejudicial error of law in the record before us.

First, it is insisted that defendant cannot be prosecuted for common assault under section 1850 of the statutes for the reason that the provisions of section 1857 apply exclusively to offenses of this character committed against an infant by his legal custodian. Section 1850 merely provides a penalty for the commission of a common law offense. It has application to an assault and battery committed by a natural parent on the person of his child unless it should be said that the provisions of section 1857 reasonably construed should govern even in cases where that relationship exists, and that in dealing with the entire subject of such offenses the statute superseded the common law and in effect repealed it.

An analysis of section 1857 convinces us that it was the legislative intent to restrict its application to cases where the relation between the parties to the assault was not that of parent and child but that of master and apprentice or some analogous relationship. The meaning of the clause "or other person having the legal care and control of any infant" is modified by the context. It has relation to the preceding words "master . . . of an

apprentice," and these refer to a different and baser kind of relationship than that of parent and child. They are generic and the clause extending the scope of their application by all logical rules of interpretation may include other kinds of relationship of an equal or inferior class, but cannot embrace one of superior class. It is a quite common practice, in dealing with several analogous subjects, to select the one of chief importance and refer to the others in general terms, but the use of an opposite form of expression would be a thing so unusual that we are not justified in assuming it was employed in the present instance. No more needs be said in support of the view that the section under consideration does not apply to parent and child. As to them, the common law relating to the offense of assault and battery by the parent still obtains. It is conceded the boy was adopted by defendant under a deed of adoption. The relation of parent and child thereby was established by force of law between them and defendant's conduct is to be measured by the same principles and rules that would control had he been the natural father of the boy. [R. S. 1899, sec. 5248; Moran v. Stewart, 122 Mo. 295.] It follows that the information is not objectionable in charging the commission of common law offenses.

Preliminary to the disposition of other points made against the information and the instructions given, it is essential to pronounce the test by which, in a given case, corporal punishment inflicted on a child by his parent is to be classified as a lawful chastisement or as an assault for which the parent should be punished. The law accords to parents a wide latitude in which to exercise discretion in the enforcement of family discipline. The extent and nature of the punishment to be applied as a corrective of youthful disobedience or excess is wisely left to the judgment of the parent whose natural love for his child is deemed to provide an efficient barrier against any impulse to punish with undue severity. The parent

is the sole judge of the necessity for the exercise of disciplinary right and of the nature of the correction to be given, and the mere fact that a castigation he gives his child may appear to others to be unnecessarily harsh or severe does not make of his conduct a subject of judicial cognizance. As long as he acts in good faith, honestly thinking that what he does is for the benefit of the child, he is within his prerogative and the law will not interfere. Courts do not and should not constitute themselves the arbiters of the household. There the authority of the parents, within the limits we shall presently define, is supreme and from their judgment there is no appeal. But these domestic tribunals have limits to their jurisdiction, beyond which they may not go with impunity. The welfare of the child is the principle ground on which the parental right to chastise him is founded and, where the punishment inflicted is so excessive and cruel as to show beyond a reasonable doubt that the parent was not acting in good faith for the benefit of the child but to satisfy his own evil passion, he no longer is to be considered as a judge administering the law of the household, but as a malefactor guilty of an unlawful assault on a helpless person entrusted to his care and protection. Thus, to maim the child or endanger his life or health, or to severely beat him with an improper and dangerous instrument, though no permanent injury be given, or to subject him to unusual forms of physical torture, or to whip him with such excessive severity as implies the absence of a due appreciation of parental duty, are acts which in themselves bespeak evil intent; and a parent guilty of such excess will not be heard to say that he thought he was acting for the benefit of the child. The existence of criminal intent will be presumed to have prompted the commission of the excessive act whether it resulted in permanent injury or disfigurement, or in temporarily subjecting its victim to merciless physical pain. [State v. Boyer, 70 Mo. App.

156; 1 Bishop on Criminal Law, sec. 882; 1 Wharton on Criminal Law (10th Ed.), 631; Schouler's Domestic Relations (3rd Ed.), 244; Commonwealth v. Randall, 4 Gray 36; Danenhoffer v. State, 69 Ind. 295; State v. Jones, 95 N. C. 588; State v. Dickerson, 98 N. C. 708.]

It was not necessary to charge an intent in the information. The allegation that defendant "did then and there unlawfully assault," etc., sufficiently advised him of the offense he was charged with having committed. The use of the word "unlawfully" necessarily implied that the assault was delivered with criminal intent. [State v. Boyer, supra; State v. Cox, 43 Mo. App. 328.]

Nor was it error to direct a verdict of guilty on the finding that defendant "inflicted unreasonable, cruel and excessive punishment on the witness, Willie Brown," etc., without including in the hypothesis that the punishment was inflicted with malice. The finding that the punishment was unreasonable, cruel and excessive necessarily included the finding that it was inflicted with criminal intent. [State v. Boyer, supra; Com. v. Randall, supra.] And this is all that is required to constitute an assault under the principles we have stated.

The use of the word, punishment, in the instruction without qualifying it with the adjective, corporal, or with one of similar import is not subject to criticism. The argument that the jury could have convicted defendant on the finding that the punishment consisted of verbal abuse is too farfetched for serious consideration. If the jury was composed of reasonable men, as we assume it was, it could not have put such construction on the term employed.

Objection is made to the rulings of the learned trial judge in permitting the State to offer evidence to show with reference to the assault charged in the first count of the information "that the defendant compelled the prosecuting witness to walk home a distance of three or four miles; that the road was hilly and in places

rocky; that defendant carried in his hand a whip as this road was being traversed and that defendant compelled the prosecuting witness to walk barefoot as he journeyed over this road." The theory of the objection appears to be that these facts should be regarded as being disassociated from the offense charged and, being immaterial, their introduction in evidence could have no other effect than that of inflaming the passions of the jury against defendant. To run the child a distance of four miles or more over a hilly and rocky road under the stimulus of a cruel whip was as much a part of the offense as were the blows delivered. The pain, the fatigue, the present fear, the apprehension of worse to come with which he was tortured in body and mind, the continuous, unrelenting and worrying pursuit of his tormentor who throughout was animated by a single purpose, combine to present a continuous assault which began when the boy dismounted from the horse and continued over the course of the trip homeward. The occurrences and circumstances of the whole journey are of the *res gestae* and evidence of them was properly admitted.

A careful inspection of the entire record discloses that defendant was accorded a fair and impartial trial. Other points made by his counsel do not impress us as being of enough importance to merit special notice. The judgment is affirmed. All concur.